**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Mary Coffou, | No. CV-19-03120-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Life Insurance Company of North America, et al., | |
| Defendants. | |

On March 6, 2020, the Court heard oral argument on Plaintiff's motion to compel compliance with proposed discovery.  (Docs. 25, 39.)  For the reasons set forth below, the motion is granted in part and denied in part.

**I. Background**

Plaintiff is a 64-year-old mother of one who was employed by Meda Pharmaceuticals, Inc. ("Company").  Because of neck and back pain, Plaintiff became unable to work in November of 2013.  She was later determined to be disabled and eligible for monthly long-term disability ("LTD") benefits.  Defendant Life Insurance Company of North America ("LINA") provides the LTD benefits through the Company's group LTD policy.

In addition to an LTD policy, the Company provided a group life insurance policy ("Policy") also through LINA. Plaintiff has two life insurance policies through the Company's carrier: basic life insurance coverage of $130,000 and voluntary coverage of $300,000.  Her child is the sole beneficiary.

A benefit provided by the Company, through LINA, to employees meeting the Policy's definition of "disabled" is the waiver of life insurance policy premiums, Life Insurance Waiver of Premium ("LWOP"). However, the definition of "disabled" in the LTD policy is different than for LWOP coverage.  The capacity to work part-time is disqualifying for LWOP benefits while it may not be for LTD benefits.

Here, LINA found that Plaintiff has the ability work part-time and is therefore disqualified from receiving LWOP benefits.  Plaintiff contends the finding is incorrect and that the only people who claim she can work, even part time, are LINA and its experts. Specifically, LINA initially approved Plaintiff's claim for LWOP but terminated it on April 9, 2015.  Plaintiff appealed the termination, which LINA denied.  Plaintiff appealed that denial on February 16, 2016, and on December 22, 2016, LINA concluded that she met the definition of "disabled" and approved her LWOP benefit.  However, on May 30, 2017, LINA found that she did not meet the policy definition of disabled and again terminated her LWOP benefit. Plaintiff appealed the termination, but LINA denied the claim.  On March 29, 2019, her subsequent appeal was denied.

Prior to the final LINA denial, the Social Security Administration (SSA) approved Plaintiff's disability claim. The Administrative Law Judge (ALJ) for the SSA hearing found that Plaintiff was disabled as of November 23, 2013, and that because of her disability, was precluded from engaging in any work.  Plaintiff submitted her complete SSA claim file to LINA, including the ALJ decision, letters from treating physicians, independent medical examination reports from board certified physicians, functional work assessments, vocational evaluations, lay-witness affidavits and updated medical records.

Plaintiff brought this suit for enforcement of the LWOP provisions of the Policy. She alleges that when deciding to deny the LWOP benefit, LINA was operating under a structural financial conflict of interest—administering Plaintiff's claim while simultaneously being required to provide the benefits if it found her disabled.  Plaintiff argues that LINA set out to deny the claim by purposely employing third party vendors to supply experts who would reliably make findings in support of denying the claim.  Plaintiff

asserts that in reaching its decision to deny the claim, LINA relied exclusively on its retained experts who only reviewed records, and disregarded important relevant information including, among other things, the medical evidence of her own treating doctors and vocational evaluator and the reports of the independent third party, the Social Security ALJ.

## II. Legal Standard

The parties agree that the Court's review of LINA's decision to deny LWOP benefits is *de novo*. In a *de novo* review, the Court does not consider whether LINA's decision to deny benefits amounted to an abuse of discretion, but rather the Court evaluates whether the decision was correct. *Abatie v. Alta Health & Life Ins. Co*., 458 F.3d 955, 963 (9th Cir. 2006) (*en banc*). In other words, the Court must determine for itself whether the Plaintiff meets the definition of "disabled" under the Policy.

Because this is an ERISA case, discovery plays a far more limited role than in most civil cases. Limiting discovery is particularly important when the Court is conducting a *de novo* review. "[T]he district court should exercise its discretion to consider evidence outside of the administrative record '*only* when the circumstances *clearly establish* that additional evidence is *necessary* to conduct an adequate de novo review of the benefit decision.'" *Opeta v. Nw. Airlines Pension Plan for Contract Emp.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (emphasis in original) (quoting *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F. 3d 938, 944 (9th Cir. 1995)).

In *Opeta*, the Ninth Circuit set forth a "non-exhaustive list of exceptional circumstances where introduction of evidence beyond the administrative record could be considered necessary[.]" *Id.* Three of the exceptional circumstances recognized by *Opeta* –"claims that require consideration of complex medical questions or issues regarding the credibility of medical experts[,] claims that would have been insurance contract claims prior to ERISA[, and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality"—exist here. *Id.* However, the existence of exceptional circumstances does not necessarily require the admission of new evidence.

*Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (9th Cir. 1993).  Although *Opeta* addressed admissibility of new evidence, it is generally recognized that, logically, *Opeta* also pertains to limits on discovery.  *Nguyen v. Sun Life Assurance Co. of Canada*, CIV. No. 3:14-05295-JST(LB), 2015 WL 6459689 (N.D. Cal. Oct. 27, 2015).

## III.  Discussion

Plaintiff seeks discovery into whether LINA's third party vendors and their third-party vendor retained doctors, who made findings that Plaintiff was able to work, were motivated by conflict of interest or bias.  Plaintiff seeks to explore the bias of LINA's vocational expert, Glenna Taylor, M.Ed., CRC, of the third party vendors who supplied medical experts, (MCN, Dane Street, MCMC, Genex), and of the third-party vendor experts themselves (Joseph Rea, M.D., Kevin F. Smith, M.D., Ben Hur MOBO, M.D., Howard Grattan, M.D.).

LINA contends that there is nothing unique or exceptional in this *de novo* review that would warrant the admission of evidence outside the administrative record and that any discovery outside the administrative record would not be proportional to the needs of the case because Plaintiff "will neither win a large amount of money nor vindicate vitally important values if she prevails here."  (Doc. 31 at 13.)

The outcome of this case turns on the credibility of the experts.   When the court is presented with diametrically opposed expert reports, bias or prejudice of the experts becomes highly relevant.  That experts are paid for their work is not probative of bias.  "[S]everal district courts in this circuit have held that the mere fact that a physician receives compensation from a plan administrator for performing medical reviews is insufficient by itself to be probative of bias."  *Polnicky v. Liberty Assurance Co. of Boston*, CIV No. 13-1478-SI, 2014 WL 969973, at *2 (N.D. Cal. Mar. 2014) (citing cases).  However, where an expert or the third-party vendor who supplies that expert has a long-standing relationship with or receives substantial compensation income from performing examinations for a carrier or industry, and overwhelming renders opinions in their favor, such evidence may be important in accessing that expert's bias and credibility.

For several reasons, this case meets the exceptional circumstances test set out by *Opeta*. This is a case in which the carrier has an admitted structural conflict and a history of self-dealing, resulting in its claims practices being subject to an extensive national "market conduct study," a 2013 Regulatory Settlement Agreement ("RSA"), and continued monitoring. In addition, Plaintiff's claims would have been insurance contract claims prior to ERISA. Further, Plaintiff has pointed out that some of LINA's experts, Drs. Grattan and Mobo, rendered opinions outside their area of expertise. And, Plaintiff has indicated that LINA provided its vocational consultant, Glenna Taylor, with the reports and limitations by its own experts, Drs. Mobo and Grattan, but did not provide all the medical records and report that Plaintiff used to support her claim. Also, LINA did not provide the SSA ALJ's decision, the SSA claims file, or Plaintiff's medical, vocational, and lay witness evidence.

LINA's conduct puts this case outside the garden-variety "structural conflict of interest" scenario. Rather, LINA's history and the unchallenged representations of Plaintiff that LINA provided its experts with its other experts' reports, but not the entire record, raises concerns whether LINA's structural incentive to minimize benefit payments distorts its obligation to fairly handle benefits claims. This warrants discovery into LINA's relationships with its vendors and experts and into whether it was employing vendors and experts who would reliably do LINA's bidding.

Nevertheless, LINA argues that such discovery is not proportional to the needs of the case, noting, "Ms. Coffou will neither win a large amount of money nor vindicate vitally important personal or public values if she prevails here [and] will never recover a dollar of her life insurance benefits even if she is reinstated. This is a case in which she cannot recover any money in benefits." (Doc. 31 at 13.) It further contends that "[t]he coverage, even if she prevails, is fleeting, lasting only through October 2021" and "she has adduced no evidence or argument that she is actually likely to pass away during that short window of coverage." (Doc. 31 at 14.) Despite assertions that the limited importance of the issues and amount in controversy are not proportional to discovery's burden, it makes no argument or showing of what the burden would be.

- 5 -

LINA's argument that the LWOP benefit, which pays the policy premium for $430,000 in life insurance, is practically valueless is belied by the fact that it has denied the benefit and by the amount of resources it has invested to support that denial. The Court finds that the LWOP benefit for an unemployed single mom in poor health, whose capacity to hold any employment is the subject of litigation, is a valuable benefit and that her qualification for that benefit is an important issue at stake in the action.

The Court will require LINA to answer certain interrogatories that explore the history of its relationship, from 2014 through 2017, with the third-party vendors and the experts it employed here. LINA will be required to respond to interrogatories that delve into the number of times it retained and the amount of money it paid to third party vendors and medical reviewers utilized here, as well as the number of times its internal vocational assessor has conducted vocational assessments and concluded that a claimant could perform work. The Court finds that LINA has the resources to respond to the discovery requests and is the only party with access to the requested discovery. The Court further finds that the discovery ordered herein is relevant and proportional to the needs of the case and that the burden or expense of the discovery does not outweigh its likely benefit. Accordingly,

**IT IS ORDERED** that Plaintiff's motion to compel compliance with proposed discovery (Doc. 25) is granted in part and denied in part as follows:

Plaintiff's motion to compel compliance with proposed discovery is **GRANTED** as to interrogatories 1, 3, 5, 7, 8, 10, 12, 14, and 15.

All other discovery requested in Plaintiff's motion is **DENIED**.

Dated this 10th day of March, 2020.

Douglas L. Rayes
United States District Judge

- 6 -